UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ENNOVA RESEARCH SRL,<br><br>    Plaintiff,<br><br>    v.<br><br>BEEBELL INC.,<br><br>    Defendant. | Case No. 16-cv-05114-KAW<br><br>**ORDER GRANTING MOTION TO SET ASIDE ENTRY OF DEFAULT; DENYING MOTION FOR DEFAULT JUDGMENT**<br><br>Re: Dkt. No. 12, 36 |

On September 6, 2016, Plaintiff Ennova Research SRL filed the instant action against Defendant BeeBell, Inc., alleging breach of contract. (Compl., Dkt. No. 1.) On October 17, 2016, Plaintiff filed a certificate of service, which indicated that Defendant was served on September 2016, by personal service of the summons and complaint on Cosimo Spera. (Dkt. No. 8.) Plaintiff then moved for entry of default, and default was entered on October 25, 2016. (Dkt. No. 11.) Plaintiff then moved for default judgment. (Dkt. No. 12.)

On March 3, 2017, Defendant moved to set aside the default under Federal Rule of Civil Procedure 55(c). (Def.'s Mot., Dkt. No. 36.) The Court deemed the matter suitable for disposition without hearing pursuant to Civil Local Rule 7-1(b). (Dkt. No. 43.) Having considered the papers filed by the parties and the relevant legal authority, the Court GRANTS the motion to set aside entry of default and DENIES the motion for default judgment as moot.

## I.    BACKGROUND

In December 2015, Defendant entered into a contract with Plaintiff ("Agreement"), whereby Defendant solicited, ordered, and purchased software development services ("Software Services") from Plaintiff. (Compl. ¶ 13; Andreace Decl., Dkt. No. 12-5, Exh. A.) Plaintiff agreed to provide Software Services to Defendant, in exchange for $16,000 per month. (Compl. ¶ 13;

Andreace Decl. ¶ 5, Exh. A at 6.) Plaintiff procured and timely delivered and provided the Software Services to Defendant, who accepted and benefited from the same. (Compl. ¶ 14; Andreace Decl. ¶ 6.) From January to May 2016, Plaintiff regularly issued to Defendant written documents evidencing the debt owed by Defendant under the Agreement, in the form of invoices, for the amounts owed by Defendant. (Andreace Decl. ¶ 7, Exh. B.)

Defendant failed to make payments owed under the Agreement until May 2016, when it issued two checks for $16,000 each, drawn on a financial institution named First Republic Bank. (Compl. ¶ 17, Andreace Decl. ¶ 8.) The checks, however, were rejected by First Republic Bank due to insufficient funds. (Compl. ¶ 17, Andreace Decl. ¶ 8, Exh. C.) Defendant never replaced the checks, and never paid the money owed for the Software Services being provided. (Andreace Decl. ¶ 9.)

On June 10, 2016, Plaintiff informed Defendant that it would no longer be providing services due to the breach of contract, and that Defendant owed a principal amount of $64,000 for the period of January through April 2016. (Andreace Decl. ¶ 10.) On July 8, 2016, Plaintiff again notified Defendant by certified mail that Defendant owned a principal amount of $64,000 for the period of January through April 2016, and that an additional invoice for $16,000 in services provided in May 2016 was forthcoming. (Andreace Decl. ¶ 11, Exh. D.) Plaintiff also requested $200 for bank fees incurred on the bounced checks. Defendant did not respond. (Andreace Decl. ¶ 11.)

After efforts by a collection firm failed, Plaintiff obtained legal counsel. (Andreace Decl. ¶¶ 12-13.) On August 15, 2016, Plaintiff's counsel contacted Defendant's Chief Executive Officer, Mr. Cosimo Spera, via certified mail, demanding payment of the principal unpaid amount of $80,000. (Masserat Decl. ¶ 6, Exh. B, Dkt. No. 12-1.) Mr. Spera acknowledged receipt of the demand, and stated that Defendant's counsel would contact Plaintiff's counsel. (Masserat Decl., Exh. C.) Defendant's counsel never reached out. (Masserat Decl. ¶ 8.)

Plaintiff proceeded to file this suit, alleging claims for: (1) breach of contract, (2) open book account, (3) account stated, (4) unjust enrichment, and (5) money due on dishonored checks. On September 22, 2017, Mr. Andy Esquer, the process server, went to Mr. Spera's Bush Street

residence. (Spera Decl. ¶ 7, Dkt. No. 36-2; Esquer Decl. ¶ 6, Dkt. No. 39-4.) When Mr. Esquer buzzed Mr. Spera's residence, Mr. Spera "identified himself as Defendant's CEO, stated that he was out of town, took [Mr. Esquer's] number and said he would call [Mr. Esquer] when he return[ed]." (Esquer Decl. ¶ 6.) Mr. Spera disputes this account; he asserts that Mr. Esquer did not identify himself, instead only stating that he "had some papers for me." (Spera Decl. ¶ 13.) Mr. Spera said he was out of town, but did not receive any contact information from Mr. Esquer or state that he would contact Mr. Esquer when he returned to San Francisco. (*Id.*)

On September 30, 2017, Mr. Esquer returned to Mr. Spera's Bush Street residence. (Esquer Decl. ¶ 7.) The proof of service indicates that when Mr. Esquer buzzed, Mr. Spera answered and "again stated he was out of the country." (Dkt. No. 8 at 2 (all caps omitted).) Mr. Spera then "told [Mr. Esquer] to enter the building and leave the papers at his door, stating that he was authorized to accept service." (Esquer Decl. ¶ 7.) After Mr. Spera buzzed Mr. Esquer in, Mr. Esquer left the documents in front of Mr. Spera's unit, taking three pictures of the envelope. (Esquer Decl. ¶¶ 7-8, Exh. 2.) Again, Mr. Spera disputes this account; he asserts that Mr. Esquer buzzed but did not identify himself, stating only that he "had some papers for me." (Spera Decl. ¶ 16.) Mr. Spera told Mr. Esquer that he was not home, but did not state that he was out of the country. Mr. Spera also states that he did not provide access to the building, did not say he would buzz Mr. Esquer in, and did not allow Mr. Esquer to leave papers at or near his door. Further, when he returned to his home on October 3, 2016, he did not find any papers addressed to him at the street level door, in the lobby, or near his door. (Spera Decl. ¶ 18.) Following Mr. Esquer's asserted service, Ms. Tiffany Jensen mailed copies of the summons and complaint to Defendant, also on September 30, 2016. (Jensen Decl. ¶ 5, Exh. 1, Dkt. No. 39-5.)

On October 17, 2017, Plaintiff filed the proof of service with the Court. (Dkt. No. 8.) The following day, Mr. Spera contacted Plaintiff's counsel, stating that he was not served with the summons but offering to settle the case. (Supp. Masserat Decl. ¶ 8, Exh. 4, Dkt. No. 39-1.) Plaintiff's counsel responded that service was perfected. (Supp. Masserat Decl. ¶ 9, Exh. 5.) On October 23, 2016, Plaintiff applied for entry of default as to Defendant. (Dkt. No. 9.) On October 25, 2016, the Clerk of the Court entered default. (Dkt. No. 11.)

3

On November 2, 2016, Plaintiff moved for default judgment. (Dkt. No. 12.) On November 22, 2016, Plaintiff's counsel sent Mr. Spera a letter, explaining that in light of Defendant's failure to file a responsive pleading or appear in the action, Plaintiff was seeking entry of a default judgment. (Supp. Masserat Decl. ¶ 12, Exh. 7.) On November 23, 2016, Mr. Spera responded that he had sent a settlement proposal. (Supp. Masserat Decl. ¶ 13, Exh. 8.) Plaintiff asserts that the parties then "engaged in a laborious and time-consuming negotiation process." (Supp. Masserat Decl. ¶ 14.)

On December 15, 2016, the Court held a hearing on Plaintiff's motion for default judgment, at which Mr. Spera appeared. (Dkt. No. 27.) Mr. Spera stated that service had not been completed. Mr. Spera indicated that he would be seeking counsel and filing a motion to set aside entry of default. (*Id.*; *see also* Dkt. No. 30.) On January 23, 2017, Mr. Jeffrey M. Capaccio and Mr. Robert Joseph Yorio filed notices of appearance on behalf of Defendant. (Dkt. Nos. 28, 29.) On January 26, 2017, the Court issued an order requiring Defendant to file a motion to set aside entry of default by February 17, 2017. (Dkt. No. 30.)

On February 15, 2017, the parties stipulated to continue the deadline for Defendant to file its motion to set aside entry of default to March 3, 2017. (Dkt. No. 34.) On March 2, 2017, Mr. Jack Vincent Valinoti filed a notice of appearance on behalf of Defendant. (Dkt. No. 35.) It appears that on January 25, 2017, Mr. Capaccio and Mr. Yorio informed Plaintiff's counsel that Defendant was not willing to reimburse Plaintiff's counsels costs in order to have Plaintiff voluntarily set aside the entry of default. (Valinoti Decl., Exh. 2, Dkt. No. 41-2.) That same day, Plaintiff's counsel informed Mr. Capaccio and Mr. Yorio that they had a conflict of interest, as their firm had previously met with Plaintiff's management to discuss matters pertaining to Plaintiff's "corporate structure and other confidential matters." (Valinoti Decl., Exh. 3.) Plaintiff's counsel requested that Mr. Capaccio and Mr. Yorio recuse themselves, or Plaintiff would file a motion for disqualification. (*Id.*)

On January 31, 2017, Mr. Capaccio responded that he had previously informed Plaintiff's counsel that during the meeting between Mr. Capaccio and Plaintiff's management, they did not discuss confidential information or provide any confidential written company materials. (Valinoti

4

Decl., Exh. 4.) Instead, Mr. Capaccio's firm had provided only a "very generic capabilities presentation," describing out the firm works, fees, and their approach to intellectual property matters. (*Id.*) At no point was Mr. Capaccio's firm retained to perform legal work. Mr. Capaccio also stated: "You and I both know that a conflict does not exist and that during our last phone call you did not agree with your client's suggestion that one potentially existed." (*Id.*)

Defendant then retained Mr. Valinoti's firm on March 1, 2017.[1] That same day, Mr. Valinoti called Plaintiff's counsel to seek an extension on the March 3, 2017 deadline to file its motion to set aside. (Valinoti Decl. ¶ 9.) Mr. Valinoti then called Plaintiff's counsel on the morning of March 2, 2017, and sent an e-mail asking Plaintiff's counsel to contact him to discuss an extension of the deadline. (Valinoti Decl. ¶¶ 10-11.) Later that morning, Mr. Valinoti sent Plaintiff's counsel a second e-mail, before calling a third time that afternoon, and e-mailing a third time that evening. (Valinoti Decl. ¶¶ 13-15.) Plaintiff's counsel then responded, stating that there was "no good cause to grant any further extensions to [Defendant], and [Plaintiff] will vigorously oppose any requests to that effect." (Valinoti Decl., Exh. 6.)

On March 3, 2017, Defendant filed its motion to set aside entry of default, along with a declaration by Mr. Spera. On March 17, 2017, Plaintiff filed its opposition to Defendant's motion to set aside default. (Plf.'s Opp'n, Dkt. No. 39.) Plaintiff separately filed evidentiary objections to Mr. Spera's declaration. (Plf.'s Obj., Dkt. No. 40.) On March 24, 2017, Defendant filed its reply. (Def.'s Reply, Dkt. No. 41.)

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 55(c) permits the Court to "set aside an entry of default for good cause, and it may set aside a final default judgment under Rule 60(b)." In determining "good cause," the Court typically considers three factors:

> (1) whether the party seeking to set aside the default engaged in culpable conduct that led to the default; (2) whether it had no meritorious defense; or (3) whether reopening the default judgment would prejudice the other party.

---

[1] Neither Mr. Capaccio nor Mr. Yorio have been withdrawn as counsel, and remain counsel of record on the court docket.

*United States v. Signed Personal Check No. 730 of Yurban S. Mesle (Mesle)*, 615 F.3d 1085, 1091 (9th Cir. 2010). Because this standard "is disjunctive, . . . a finding that any one of these factors is true is sufficient reason for the district court to refuse to set aside the default." *Id.* At the same time, the Ninth Circuit has long emphasized that "judgment by default is a drastic step appropriate only in extreme circumstances; a court should, whenever possible, be decided on the merits." *Falk v. Allen*, 739 F.2d 461, 463 (9th Cir. 1984). Moreover, while the same "good cause" test applies to motions seeking relief from entry of default under Rule 55(c) and default judgment under Rule 60(b), "the test is more liberally applied in the Rule 55(c) context . . . because . . . there is no interest in the finality of the judgment with which to contend." *Mesle*, 615 F.3d at 1091 n.1 (citing *Haw. Carpenters' Trust Funds v. Stone*, 794 F.2d 508, 513 (9th Cir. 1986)).

## III. DISCUSSION

### A. Plaintiff's Evidentiary Objections

As an initial matter, the Court OVERRULES Defendant's evidentiary objections to Mr. Spera's declaration because they are in violation of Civil Local Rule 7-3(a), which states: "Any evidentiary and procedural objections to the motion must be contained within the [opposition] brief or memorandum."[2] In any case, many of the objections are not well-taken, challenging the merits and veracity of Mr. Spera's statements.

### B. Premature Entry of Default

The Court finds that entry of default by the Clerk was premature. Rule 12(a) requires that in relevant part, "[a] defendant must serve an answer: (1) within 21 days after being served with the summons and complaint . . . ." "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Before default is entered, "the clerk must be satisfied from the request and accompanying documentation that 1) the defendant has been served with the summons or has agreed to waive service, 2) the time allowed

---

[2] The Court also notes that Plaintiff's 14-page opposition violates Civil Local Rule 7-4(a), which requires that "a brief or memorandum of points and authorities filed in support, opposition or reply to a motion must contain: . . . (2) If in excess of 10 pages, a table of contents and a table of authorities."

by law for responding has expired, and 3) the defendant has failed to file a pleading or motion permitted by law; however, no notice to the defendant is required." *United States ex rel. Felix Haro Constr., Inc. v. St. Paul Fire & Marine Ins. Co.*, No. 1:07-cv-1396-LJO-SMS, 2009 WL 1770156, at *3 (E.D. Cal. June 23, 2009) (citing *Haw. Carpenters' Trust Funds v. Stone*, 794 F.2d 500, 512 (9th Cir. 1986).)

In the instant case, the parties dispute whether service was properly made. Rule 4(h)(1)(A) permits a corporation to be served "in the manner prescribed by Rule 4(e)(1) for serving an individual." Rule 4(e)(1), in turn, permits service by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Plaintiff contends that service is proper under California Code of Civil Procedure § 415.20(a), which states in relevant part:

> In lieu of personal delivery of a copy of the summons and complaint to the person to be served . . . a summons may be served by leaving a copy of the summons and complaint during usual office hours in his or her office . . . with the person who is apparently in charge thereof, and by thereafter mailing a copy of the summons and complaint by first-class mail, postage prepaid to the person to be served at the place where a copy of the summons and complaint were left. When service is effected by leaving a copy of the summons and complaint at a mailing address, it shall be left with a person at least 18 years of age, who shall be informed of the contents thereof. Service of a summons in this manner is deemed complete on the 10th day after the mailing.

(*See* Plf.'s Opp'n at 5 (arguing that pursuant to § 415.20, "service can be perfected in lieu of personal delivery of the summons and complaint . . . by leaving a copy of the summons and complaint during usual office hours at the office or usual mailing address, and by thereafter mailing a copy of the summons and complaint by first-class mail . . . . This is exactly what happened here") (internal quotations omitted); *see also id.* at 6 ("leaving papers by the door is called 'proximate service." . . . When combined with service by mail, it amounts to 'personal service'); *id.* ("Pursuant to California law, 'proximate service' followed by mailing of the papers, is considered to 'perfect' service").)

In general, "[i]f the sufficiency of service is challenged, the party on whose behalf service was made has the burden to establish its validity." *Hickory Travel Sys. v. Tui Ag*, 213 F.R.D. 547,

551 (N.D. Cal. 2003) (internal quotation and modification omitted). The Ninth Circuit has held, however, that "a signed return of service constitutes prima facie evidence of valid service which can be overcome only by strong and convincing evidence." *SEC v. Internet Sols. for Bus., Inc.*, 509 F.3d 1161, 1162 (9th Cir. 2007). In *Collagen Nutraceuticals, Inc. v. Neocell Corp.*, the district court found that the validity of service was not overcome where the individual served provided a declaration which stated that physical access was not possible to her property due to two locked gates, a long driveway, and guard dogs. Civil No. 09-cv-2188-DMS (WVG), 2010 W: 3719101, at *2 (S.D. Cal. Sept. 20, 2010). The individual also provided a recent photo of herself which indicates she was 140 pounds, not 120 pounds as stated in the process server notes, and no longer kept short blond hair. The process server countered with a declaration that he was at the correct property and that the two gates were not always locked. *Id.* The district court found the declaration made by the individual served was insufficient to rebut the process server's declaration. *Id.*; *see also Kalani v. Statewide Petroleum, Inc.*, No. 2:13-cv-2287-KJM-AC, 2014 WL 1096613, at *2 (E.D. Cal. Mar. 19, 2014) (agent of service's sworn declaration that he was not at home at the time the complaint was served at his residence, and that only his two minor daughters were present, was not clear and convincing evidence); *Sweeney v. Christner*, No. C 13-2817 HRL, 2013 WL 5946504, at *2 (N.D. Cal. Nov. 5, 2013) (statement that the defendant's husband had orange hair, not brown hair as described by the process server, was not clear and convincing evidence).

Here, Defendant first argues that Mr. Spera was not properly served per California Code of Civil Procedure 415.20 because Mr. Spera states in his declaration that he was not told of the contents of the summons and complaint, as required by the statute. (Def.'s Reply at 4.) Plaintiff, however, has provided a declaration from Mr. Esquer, stating that Mr. Spera informed him that Mr. Spera was authorized to accept service. (Esquer Decl. ¶ 7.) Mr. Spera's declaration alone is insufficient to constitute the "strong and convincing evidence" required to overcome the validity of the proof of service, particularly where the declaration of the process server indicates that Mr. Spera was informed of the contents of the papers to be served, as otherwise Mr. Spera would presumably have not stated that he was "authorized to accept service."

8

This is particularly the case where there may be some questions of Mr. Spera's credibility. For example, Mr. Spera states in his declaration that he "did not receive **any notice of this action** until sometime after November 2, 2016, which is when Plaintiff filed its motion for entry of judgment against [Defendant]." (Spera Decl. ¶ 20 (emphasis added).) Plaintiff's counsel, however, provides an e-mail from Mr. Spera, dated October 18, 2016 (the day following entry of default), which states: "I was never served with a Summons." (Supp. Masserat Decl., Exh. 4.) Such a statement shows that Mr. Spera was definitively aware of the action prior to November 2, 2016. Mr. Spera acknowledges this e-mail in his supplemental declaration, but does not explain his statement that he had no *notice* of the lawsuit prior to November 2, 2016, despite initiating communications with Plaintiff's counsel on October 18, 2016 to discuss the service of the lawsuit he now claims to have had no notice of. (Supp. Spera Decl. ¶ 10, Dkt. No. 41-1.)

Second, Defendant asserts that Mr. Spera was not properly served because the papers were only left outside of his residence, rather than being left with a person at least 18 years old. (Def.'s Reply at 4.) California courts, however, have explained that "[t]he evident purpose of Code of Civil Procedure section 415.20 is to permit service to be completed upon a good faith attempt at physical service on a responsible person, plus actual notification of the action by mailing the summons and complaint to the appropriate person." *Khourie v. Sabek*, 220 Cal. App. 3d 1009, 1013 (1990). Thus, "a defendant will not be permitted to defeat service by rendering physical service impossible." *Id.* In *Khourie*, "the process server provided actual notice of the documents to the person apparently in charge of [the defendant]'s office and, prevented by that person from leaving them inside the office, left them on the other side of the office door." *Id.* at 1014. The Court of Appeal concluded that "[n]o more was required to effect service other than to mail to [the defendant] a copy of the summons and complaint." *Id.* Here, Mr. Esquer twice attempted to serve Mr. Spera personally, and was told to leave the papers outside a locked door, which he did. (Esquer Decl. ¶ 7, Exh. 2.) The Court finds that this was a good faith attempt to physically serve Defendant, and is sufficient under California law. The summons and complaint were then mailed to Defendant on September 30, 2016, as required by § 415.20. (Jensen Decl. ¶ 5.) The Court therefore finds that service was proper.

9

Although the Court finds that service was proper, the Court concludes that the entry of default must be set aside because service was not completed until **October 10, 2016**, 10 days after the complaint and summons were mailed to Defendant. Cal. Code of Civ. P. § 415.20 ("Service of a summons in this manner is deemed complete on the **10th day** after the mailing") (emphasis added). Per Rule 12(a), Defendant then had 21 days to respond to the complaint, or October 31, 2016. Plaintiff, however, sought entry of default on **October 23, 2016**, and default was entered on October 25, 2016. (Dkt. Nos. 9, 11.) Therefore, entry of default was premature, and must be set aside on that ground. Because the Court sets aside entry of default on the grounds that it was premature and therefore procedurally improper, the Court need not consider the factors of whether Defendant has asserted a meritorious defense or if Plaintiff is prejudiced by the setting aside of default.[3]

## IV. CONCLUSION

For the reasons discussed above, the Court GRANTS Defendant's motion to set aside entry of default. Accordingly, the Court DENIES Plaintiff's motion for default judgment as moot. Because the Court has found that service was effective as of October 10, 2016, Defendant is

---

[3] If the Court was to decide the factors, the Court would find that these factors support setting aside default.

With respect to a meritorious defense, the Ninth Circuit has made clear that the burden to present specific facts that would constitute a defense "is not extraordinarily heavy." *Mesle*, 615 F.3d at 1094; *see also id.* (explaining the "minimal nature of the burden"). Defendant asserts that there is a meritorious defense based on Plaintiff's alleged failure to perform its part of the agreement. (Def.'s Mot. at 7.) Plaintiff in turn challenges the veracity of this claim. (Plf.'s Opp'n at 7-11.) This is a question of merits that should be litigated in the course of this case, rather than on a motion to set aside entry of default.

As to prejudice, Plaintiff only asserts prejudice in the form of costs associated with setting aside default. (Plf.'s Opp'n at 13.) Such prejudice alone has typically not been determinative in a motion to set aside default, although the Court has discretion to condition setting aside entry of default on payment of attorney's fees and costs incurred. The Court declines to exercise its discretion in this case, however, particularly where the entry of default is being set aside as procedurally improper.

Finally, to the extent Plaintiff suggests that Defendant's filing of the instant motion was itself not timely, the Court notes that some of this delay may have been caused by Plaintiff itself, and its insistence of a conflict of interest that Plaintiff's counsel may have himself suggested was non-existent. (*See* Plf.'s Opp'n at 12; Valinoti Decl., Exh. 4.)

10

directed to file its responsive pleading within **fourteen days** of the date of this order; if Defendant fails to timely file its responsive pleading, Plaintiff may again move for entry of default.

IT IS SO ORDERED.

Dated: May 4, 2017

_____
KANDIS A. WESTMORE
United States Magistrate Judge