UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ENNOVA RESEARCH SRL, <br> Plaintiff, <br> v. <br> BEEBELL INC., <br> Defendant. | Case No. 16-cv-05114-KAW <br><br> **ORDER GRANTING PLAINTIFF'S MOTION TO AMEND JUDGMENT** <br> Re: Dkt. No. 82 |

Plaintiff Ennova Research SRL filed the instant case against Defendant BeeBell Inc., alleging breach of contract. (First Amended Compl., Dkt. No. 45.) On September 14, 2017, the parties jointly submitted a proposed order for entry of judgment, which required that Defendant pay Plaintiff a total amount of $87,202.24. (Dkt. No. 57.) The Court entered judgment that same day. (Dkt. No. 59.)

Pending before the Court is Plaintiff's motion to amend the judgment to add Mr. Cosimo Spera as an additional judgment debtor to the judgment. (Plf.'s Mot. to Amend, Dkt. No. 82.) The Court deems the matter suitable for disposition without hearing pursuant to Civil Local Rule 7-1(b). Having considered the filings and the relevant legal authority, the Court GRANTS Plaintiff's motion to amend.

**I.  BACKGROUND**

Defendant is a company organized and existing under the laws of Delaware. (FAC ¶ 2, Exh. B; Oct. 26, 2018 Masserat Decl., Exh. D ("Mar. 15, 2018 Spera Debtor Exam Test.") at 42:16-20, Dkt. No. 82-1.) Defendant's only officer is its CEO, Mr. Spera. (Mar. 15, 2018 Spera Debtor Exam Test. at 8:3-4; *see also* Dkt. No. 25 (letter from "Cosimo Spera, CEO BeeBell").) Mr. Spera uses his residence address as Defendant's San Francisco office address, and uses part of

1 his home to conduct Defendant's business. (Mar. 3, 2018 Spera Decl. ¶ 7, Dkt. No. 36-2.)
2 Defendant, however, is not registered to do business in California. (Mar. 15, 2018 Spera Debtor
3 Exam Test. at 42:25-43:3.) Mr. Spera works for Defendant for no salary, and has invested an
4 estimated $300,000 into Defendant. (*Id.* at 15:16-17; 38:9-13.) Mr. Spera is the only holder of
5 Defendant's debit and credit cards, and Defendant reimburses Mr. Spera for expenses including
6 travel, phones, coffee, iTunes downloads, and cable. (*Id.* at 38:18-25; Masserat Decl., Exh. E
7 ("June 7, 2018 Spera Debtor Exam Test.") at 18:5-7, 18:14-19:3, 20:15-23.) At the moment,
8 Defendant's only assets are two computers and a router owned by a third-party. (Mar. 15, 2018
9 Spera Debtor Exam Test. at 15:6-7.) Its current operations are limited to a fully-automated
10 software running on an Amazon web service. (*Id.* at 31:6-8.)

11 In December 2015, Defendant and Mr. Spera solicited Plaintiff's services, entering into a contract by which Plaintiff provided software development services. (FAC ¶ 13.) The contract was signed by Mr. Spera, as Defendant's CEO. (FAC, Exh. A.) Under the contract terms, Defendant would pay $16,000 per month; Defendant, however, did not pay any money due. (FAC ¶¶ 14-15.) In May 2016, Defendant issued checks to cover payments owed by Defendant; on the checks, BeeBell's address used the same address as Mr. Spera's residence. (FAC ¶¶ 3, 17, Exh. B.) The checks were rejected due to insufficient funds. (FAC ¶ 17, Exh. B.) Indeed, Defendant's bank statements from October 2014 to December 2015 show an average ending monthly balance of $479.60, with zero or negative end balances in five of those months. (Oct. 26, 2018 Masserat Decl., Exh. C.))

On June 10, 2016, Plaintiff informed Defendant that it would no longer provide services due to Defendant's breach of contract. (FAC ¶ 18.) That same day, Mr. Spera sent an e-mail promising to pay $32,000 and any bank fees incurred by Plaintiff due to the rejected checks. (FAC ¶ 19.) On June 11, 2016, Mr. Spera apologized for the checks and again promised to pay the amounts due. (FAC ¶ 20.) No payments were made, and the instant suit was filed in September 2016. (FAC ¶ 20; Compl., Dkt. No. 1.)

After being served, Defendant did not appear, and the Clerk of the Court entered default. (Dkt. Nos. 9, 11.) Plaintiff then moved for default judgment. (Dkt. No. 12.) Defendant did not

file an opposition. On December 15, 2016, the Court held a hearing on Plaintiff's motion for default judgment, at which Mr. Spera appeared, asserting that service was not properly performed. (Dkt. Nos. 25, 27.) After obtaining counsel, Defendant moved to set aside entry of default, which the Court granted on May 4, 2017 due to Plaintiff prematurely moving for entry of default. (Dkt. No. 44 at 10.)

On June 21, 2017, the parties entered into a settlement agreement, which Mr. Spera signed on behalf of Defendant. (Aug. 17, 2017 Masserat Decl., Exh. A, Dkt. No. 54-1.) The parties then stipulated to entry of judgment against Defendant. (Dkt. Nos. 57, 59.) Plaintiff served post-judgment written discovery requests on Defendant, which Defendant failed to fully respond to. (*See* Dkt. No. 63.) Plaintiff then moved for a judgment debtor exam, which the Court granted. (Dkt. Nos. 63, 64.) On March 15, 2018, the judgment debtor exam was held but continued due to Defendant's failure to provide all required documents. (Dkt. No. 65.) On June 7, 2018, the continued judgment debtor exam was held, but Defendant again failed to provide all required documents. (*See* June 20, 2018 Masserat Decl. ¶ 11, Dkt. No. 69-1.) Plaintiff then filed a motion for sanctions. (Dkt. No. 69.) Defendant's counsel subsequently was permitted to withdraw. (Dkt. No. 78.)

On October 26, 2018, Plaintiff filed the instant motion to amend the judgment to add Mr. Spera as an additional judgment debtor. (Plf.'s Mot. to Amend at 1.) On October 30, 2018, the Court ordered Plaintiff to provide supplemental briefing, and set an amended briefing schedule, such that the opposition was due by November 20, 2018 and the reply due by November 26, 2018. (Dkt. No. 84 at 1-2.) The Court also ordered Plaintiff to serve the motion to amend and the Court's October 30, 2018 order on Mr. Spera directly. (*Id.* at 2.)

On November 5, 2018, Plaintiff filed its supplemental briefing. (Dkt. No. 87.) Plaintiff's counsel also submitted a declaration, stating that he had asked Mr. Spera whether he wanted to be served by mail or e-mail, and the preferred address. (Nov. 5, 2018 Masserat Decl., Exh. 1 at 1, Dkt. No. 87-1.) Mr. Spera requested e-mail service at a gmail.com account. (*Id.* at 1-2.)

On November 14, 2018, the Court ordered Plaintiff to file a proof of service that the October 30, 2018 order had been served on Mr. Spera, as that order contained the amended

3

briefing schedule. (Dkt. No. 88.) On November 19, 2018, Plaintiff's counsel submitted a declaration stating that he had informed Mr. Spera by e-mail that Mr. Spera's opposition was due on November 20, 2018. (Nov. 19, 2018 Masserat Decl. ¶ 5, Dkt. No. 89.) The e-mail was dated November 18, 2018. (*Id.*, Exh. 2.) Because it appeared Mr. Spera was not informed of the briefing schedule until two days before his opposition was due, on November 19, 2018, the Court set a new briefing schedule and continued the hearing date to give Mr. Spera the opportunity to respond. (Dkt. No. 90 at 1.) That order was served on Mr. Spera by both e-mail and mail on November 22, 2018. (Dkt. No. 91.)

Mr. Spera did not file an opposition. Instead, on December 20, 2018, the day of the hearing on Plaintiff's motion, Mr. Spera requested that the hearing be continued so that he could appear. (Dkt. No. 95.) The Court ultimately permitted the hearing to go forward, and issued an order to show cause requiring Mr. Spera to file an opposition to Plaintiff's motion by January 4, 2019. (Dkt. No. 100.) The Court warned that failure to timely file the opposition would result in the Court granting Plaintiff's motion to amend as unopposed. (*Id.*)

On January 4, 2019, Mr. Spera filed an opposition. (Spera Opp'n, Dkt. No. 103.) On January 9, 2019, Plaintiff filed a reply. (Plf.'s Reply, Dkt. No. 104.)

## II. LEGAL STANDARD

"Under Federal Rule of Civil Procedure 69, district courts enforce money judgments in accordance with the procedures of the states where they are located." *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 677 (9th Cir. 2017). Thus, Rule 69 permits "federal courts to rely on state law to add judgment-debtors . . . ." *In re Levander*, 180 F.3d 1114, 1120-21 (9th Cir. 1999). "Under California Code of Civil Procedure § 187, a court has the authority to amend a judgment to add additional judgment debtors." *Id.* at 1121. To add a nonparty as a judgment debtor under § 187, the new party must: (1) be the alter ego of the old party, and (2) have controlled the litigation. *Perfect 10, Inc.*, 847 F.3d at 677.

## III. DISCUSSION

### A. Alter Ego

In determining whether an alter ego liability exists for purposes of amending a judgment,

federal courts apply California law. *See Perfect 10, Inc.*, 847 F.3d at 677. An alter ego relationship exists "under California law when (1) there is such unity of interest and ownership that the individuality, or separateness, of the said person and corporation has ceased, and (2) an adherence to the fiction of the separate existence of the corporation would sanction a fraud or promote injustice." *Id.* (internal quotation and modification omitted).

### i. Unity of Interest

California courts consider a number of factors, including whether the equitable owners "treat the assets of the corporation as their own and add or withdraw capital from the corporation at will; when they hold themselves out as being personally liable for the debts of the corporation; or when they provide inadequate capitalization and actively participate in the conduct of corporate affairs." *Minton v. Cavaney*, 56 Cal. 2d 576, 579 (1961) (internal citations omitted). "One highly relevant factor in determining a unity of interest is undercapitalization. In fact, the California Supreme Court has held that undercapitalization alone will justify piercing the corporate veil." *Nilsson, Robbins, Dalgarn, Berliner, Carson & Wurst v. La. Hydrolec*, 854 F.2d 1538, 1544 (9th Cir. 1988).

In *Nilsson*, the Ninth Circuit found that there was a unity of interest between the corporation and its president. 854 F.2d at 1544. There, the president had absolute authority to act on the corporation's behalf, owned twenty percent of the stock (with his wife owning another ten percent), received no compensation for his services as president, and personally guaranteed loans without a written agreement between the president and the corporation. *Id.* at 1543. The corporation itself had no assets, and most of its capitalization had come from the president. *Id.* The Ninth Circuit found that based on these facts, there was "more than enough evidence to support a finding of a unity of interests" because the corporation was clearly undercapitalized, and the president failed to treat the corporation as a separate entity by guaranteeing loans, paying some of its bills from his own bank account, and controlling the activities of the corporation. *Id.*

Here, as in *Nilsson*, it appears Defendant is undercapitalized, as demonstrated by the rejection of Defendant's checks to Plaintiff for insufficient funds and Defendant's current limited assets, which are currently two computers and a router owned by a third-party. (FAC Exh. B,

Mar. 15, 2018 Spera Debtor Exam Test. at 15:6-7.) Additionally, Mr. Spera appears to be the sole owner of Defendant, receives no compensation for his services as CEO, has invested $300,000 in the company, and writes personal checks to Defendant's account "to keep the company floating." (Mar. 15, 2018 Spera Debtor Exam Test. at 15:16-17, 38:9-15; June 7, 2018 Spera Debtor Exam Test. at 19:23-25.) Mr. Spera also appears to have significant control over Defendant, having signed the contract between Plaintiff and Defendant, being the only person with access to Defendant's debit or credit cards, and operating the business from his home. (FAC Exh. A; Mar. 24, 2017 Spera Decl. ¶ 5 ("I was personally involved in the agreement between Plaintiff and [Defendant] that is the subject of this action."), Dkt. No. 41-1; June 7, 2018 Spera Debtor Exam Test. at 18:21-19:3; Mar. 3, 2017 Spera Decl. ¶ 7.) Mr. Spera also did not deny using the debit and credit cards for his personal use, instead stating that if he had used them, he would have refunded the company. (June 7, 2018 Spera Debtor Exam Test. at 19:4-6.) It also appears Defendant disregarded corporate formalities, having failed to register in California despite operating out of Mr. Spera's San Francisco residence. (Mar. 15, 2018 Spera Debtor Exam Test. at 42:25-43:3.) These facts are highly similar to *Nilsson*, both in that Defendant is undercapitalized and Mr. Spera having significant control over the corporation.

In his opposition, Mr. Spera argues that "[o]fficers and high ranking employees are not reliable [sic] -- in a general case as this is -- for the acts (debts) of a corporation." (Spera Opp'n at 2.) In support, Mr. Spera states that he worked at Defendant for stocks, and ran his personal business through a LLC. (*Id.*) These facts, however, do not contradict Mr. Spera's own testimony, which as discussed above, demonstrate significant control over Defendant, an undercapitalized corporation. The Court therefore concludes there is unity of interest.

### ii. Injustice

With respect to the injustice factor, "it is sufficient that it appear that recognition of the acts as those of a corporation only will produce inequitable results." *Associated Vendors, Inc. v. Oakland Meat Co.*, 210 Cal. App. 2d 825, 837 (1962). "Mere difficulty in enforcing a judgment or collecting a debt does not satisfy the injustice standard for alter ego liability." *Perfect 10, Inc.*, 847 F.3d at 677 (internal quotation omitted). Insolvency or inadequate capitalization, however,

"may satisfy this standard when a corporation is so undercapitalized that it is unable to meet debts that may reasonably be expected to arise in the normal course of business." *Id.* (internal quotation omitted).

Here, Defendant appears to be so undercapitalized such that it cannot satisfy debts expected to arise in the normal course of business. Again, Defendant was unable to pay Plaintiff under the contract, and its assets are limited to two computers and a router owned by a third-party. *Compared with United States v. Healthwin-Midtown Convalescent Hosp. & Rehab. Ctr., Inc.*, 511 F. Supp. 416, 420 (C.D. Cal. 1981) (finding injustice because the defendant's "undercapitalization subjected all of its creditors, including plaintiff, to inequitable risks regarding [the defendant's] obligations to them"). Thus, despite having a judgment against Defendant, Plaintiff is unlikely to recover at all. Moreover, Mr. Spera not only entered into the contract with Plaintiff on behalf of Defendant, but agreed to stipulate to the judgment at issue; if Mr. Spera is now "allowed to escape liability for his actions, an inequitable result would follow." *Nilsson*, 854 F.2d at 1544.

The Court concludes that adherence to the fiction of a separate existence of the corporation would promote injustice. Because the Court already found a unity of interest, the Court concludes that there is an alter ego relationship between Defendant and Mr. Spera.

### B. Control of Litigation

To be added as a judgment debtor, Mr. Spera must also have "had control of the litigation and occasion to conduct it with a diligence corresponding to the risk of personal liability that was involved." *NEC Elecs. Inc. v. Hurt*, 208 Cal. App. 3d 772, 779 (1989). Here, Mr. Spera had control of the litigation. As a practical matter, as Defendant's only officer, Mr. Spera had control over Defendant's actions during the litigation. Mr. Spera also actively participated in the litigation, including personally appearing at the December 15, 2016 hearing on Plaintiff's motion for default judgment and submitting a letter asking that the entry of default be set aside. (Dkt. Nos. 25, 27.) Mr. Spera then submitted two declarations in support of Defendant's motion to set aside entry of default. (Dkt. No. 36-2, 41-1.) Mr. Spera also personally signed the agreement settling the instant action. (Aug. 17, 2017 Masserat Decl., Exh. A.) In his opposition, Mr. Spera does not dispute his control over the litigation. (*See* Spera Opp'n at 1-2.) The Court therefore

finds that Mr. Spera had control over the litigation.

Because there is also an alter ego relationship, the Court concludes that it is appropriate to add Mr. Spera as an additional judgment debtor under § 187.

## IV. CONCLUSION

For the reasons stated above, the Court GRANTS Plaintiff's motion to amend the judgment and add Mr. Cosimo Spera as an additional judgment debtor.

Plaintiff is ordered to serve this order on Mr. Spera.

IT IS SO ORDERED.

Dated: January 30, 2019

_____
KANDIS A. WESTMORE
United States Magistrate Judge